[Cite as *In re C.M.*, 2018-Ohio-2434.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re C.M., J.M.

Court of Appeals No. L-17-1260

Trial Court No. JC16252565

DECISION AND JUDGMENT

Decided: June 22, 2018

* * * * *

Laurel A. Kendall, for appellant.

Bradley W. King, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, which terminated the parental rights of appellant-father to the

subject minor children, C.M. and J.M., who are twins, and granted permanent custody to

appellee, Lucas County Children Services Board. For the reasons set forth below, this court affirms the judgment of the juvenile court.

{¶ 2} The following facts are relevant to this appeal. For clarity we note the record shows the same juvenile court case for the twins involved a third child of the mother with a different father, and neither the mother, the third child, nor the third child's father are parties to this appeal. In addition, the record shows the final disposition of the juvenile court case references a fourth child of the mother with yet a different father, each of whom are also not parties to this appeal. Accordingly, we limit our discussion to the juvenile court case only as it relates to appellant-father of the twins.

{¶ 3} On January 11, 2016, appellee filed a complaint in dependency and neglect, protective supervision, and an emergency motion for pre-adjudicatory orders regarding C.M. and J.M. St. Vincent's Hospital in Toledo made a referral to appellee because the twins had ingested car wax in their mother's home and were admitted to the NICU, where they were hospitalized for three days of treatment. At the time of the complaint the twins were 18 months old. Appellant's whereabouts were unknown to appellee. To appellee's knowledge, from November 20, 2015, through January 7, 2016, appellant had been incarcerated at CCNO. The mother told appellee of the history of domestic violence between her and appellant that began with her pregnancy.

{¶ 4} Following the shelter care hearing, the juvenile court's magistrate issued an interim order journalized on January 15, 2016, awarding appellee protective supervision of the twins, and appellee placed the twins in the care of their maternal grandmother who

2.

lived in the same home as the mother. The juvenile court also appointed an attorney to represent appellant.

{¶ 5} Then on February 9, 2016, appellee filed an amended complaint in dependency and neglect and a motion for shelter care hearing regarding the twins. At the time of the February 9, 2016 amended complaint, appellant was located in Ohio serving a new two-year prison term for substance abuse-related offense with an expected release date of December 31, 2017.

{¶ 6} Following a shelter care hearing on February 9, 2016, appellee's protective supervision of the twins was terminated and appellee was then awarded interim temporary custody for placement in foster care. Appellant's attorney appeared in court. Appellee placed the twins in foster care because their maternal grandmother was no longer able to care for them in the mother's home.

{¶ 7} At the adjudicatory hearing on February 23, 2016, the juvenile court found by clear and convincing evidence C.M. and J.M. were each a dependent and neglected child. As journalized on March 14, 2016, the juvenile court's magistrate recommended appellee be awarded temporary custody of the twins, effective February 23, 2016. In addition the magistrate recommended approval of appellee's case plan filed January 21, 2016, "with the goal of reunification."

{¶ 8} As journalized on March 29, 2016, the juvenile court judge adopted the magistrate's March 14, 2016 report and recommendations. Specifically, the judge found appellee "has made and continues to make * * * reasonable efforts to prevent the

3.

continued removal of the child(ren) from the home and to make it possible for the child(ren) to safely return to the home through the provision of supportive services. Those efforts include:  * * * father:  incarcerated with ODRC" and the twins receiving services through Help Me Grow.

{¶ 9} On July 13, 2016, the juvenile court held a review hearing on the case plan. As journalized on August 8, 2016, the juvenile court's magistrate decision states, "The following facts were placed in evidence:  goal:  reunification; placement:  FC, relative. * * * Martin:  in prison."  The magistrate's report and recommendation concludes, "The Court approves the case plan, placement and custody arrangement of subject child(ren). LCCS has made and continues to make * * * reasonable efforts to prevent the continued removal of the child(ren) from the home, to eliminate continued removal, or to make it possible for the child(ren) to safely return to their home through the provision of supportive services."  As journalized on August 19, 2016, the juvenile court judge adopted the magistrate's report and recommendations.

{¶ 10} Then on October 11, 2016, pursuant to R.C. 2151.23, 2151.413, and 2151.414 appellee moved for permanent custody of C.M. and J.M.  In addition, pursuant to R.C. 2151.353(F), appellant moved to extend temporary custody of C.M. and J.M. Appellee alleged the twins could not be placed with appellant within a reasonable tine or should not be placed with appellant pursuant to R.C. 2151.414(B)(1) and that permanent custody is in the twins' best interests pursuant to R.C. 2151.414(D).  Appellee's permanency plan for the twins was to obtain permanent custody so the children could be

4.

adopted. Appellant continued to be incarcerated throughout the entire course of the custody proceedings. Appellee alleged appellant also had a lengthy criminal history of convictions relevant to the permanency plan, including "Disorderly Conduct amended from Domestic Violence (2015), Disorderly Conduct amended from Domestic Violence (2014), Disorderly Conduct amended from Obstructing Official Business (2014), Disorderly Conduct While Intoxicated (2013), Disorderly Conduct While Intoxicated (2010), Resisting Arrest (208), and menacing amended from Domestic Violence (2008)."

{¶ 11} The hearing for extension to temporary custody was held November 15, 2016, and the juvenile court magistrate heard testimony from various witnesses. Appellant was served in prison, but did not appear. Appellant's attorney asked the court to waive his appearance in preparation for the scheduled January 10, 2017 hearing.

{¶ 12} The magistrate's decision by clear and convincing evidence to grant the extension was journalized on December 8, 2016, and the juvenile court judge adopted the decision by judgment entry journalized on December 15, 2016. The judge specifically stated in the judgment entry appellee "has made * * * reasonable efforts to prevent the removal of the child(ren) from the home, to eliminate the continued removal of the child(ren) from the home, or to make it possible for the child(ren) to safely return to the home through the provision of supportive services. Those efforts include: * * * father is incarcerated and unavailable for services."

{¶ 13} Additional pre-trial hearings on appellee's October 11, 2016 motion were held January 10, 2017, and February 16, 2017. Appellant's attorney appeared for each.

{¶ 14} In a decision journalized on February 17, 2017, the magistrate found by clear and convincing evidence to grant the extension and reiterated the reasonable efforts by appellee to finalize the approved permanency plan.  The juvenile court judge adopted the magistrate's decision by judgment entry journalized on February 27, 2017.

{¶ 15} Concurrently, on February 16, 2017, appellant filed a motion to extend temporary custody or, alternatively, to continue the permanent custody hearing stating that, although incarcerated, he has attempted to establish a relationship with the twins "as best he could through their entire lives."  Appellant expected to be released from prison in July 2017 and upon release "he intends to engage in whatever services are required for him to get legal custody of his children."  Appellant requested the juvenile court grant his motion "for more time to complete services for reunification."

{¶ 16} On March 13, 2017, the juvenile court held the hearing on appellant's February 16, 2017 motion for temporary custody extension, and on appellee's October 11, 2016 motion for permanent custody.  The record contains a judgment entry journalized March 13, 2017. Appellant appeared in court with his attorney.  The juvenile court denied appellee permanent custody, granted appellant's motion by further extending appellee's temporary custody of the twins for six months, and set the permanent custody hearing for September 22, 2017.

{¶ 17} Then on July 10, 2017, appellant moved for a continuance to the September 22, 2017 permanent custody trial because he "wishes to be reunified with his children," however, his release from prison would not occur until "approximately

6.

November 17, 2017." He argued a continuance to January 2018 would "allow him to return to the community and be evaluated for services for reunification." Appellee opposed the motion arguing that reliance on appellant's own testimony of his release date from prison, which has continually changed, is detrimental to the twins. Appellee "contends it would be inappropriate and against the best interests of these children for permanency to be delayed once again." As journalized on July 31, 2017, the juvenile court denied appellant's motion and affirmed the September 22, 2017 trial date.

{¶ 18} As journalized on September 6, 2017, pursuant to R.C. 2151.23, 2151.413, and 2151.414 appellee again moved for permanent custody of C.M. and J.M. In addition, pursuant to R.C. 2151.353(F), appellant again moved to extend temporary custody of C.M. and J.M. Among appellee's allegations is appellant's incarceration continuing from the time of the original complaint until an expected release date of December 2017. "The two-year mark for this case will be in January 2018. The children have been in the temporary custody of LCCS since February 2016. At the time of trial they will have been in temporary care for 19 months out of a consecutive 22 month period." Appellee sought findings pursuant to R.C. 2151.414(E)(1)-(2), (4), (13)-(14), (16). In particular under R.C. 2151.414(E)(13) where "The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child."

{¶ 19} The permanent custody hearing was held September 22, 2017. The transcript of the hearing is in the record. Appellant appeared in court with his attorney. The mother received notice, but chose to not appear. The grandmother was present, but

7.

declined to participate. By judgment entry journalized September 29, 2017, the juvenile court granted permanent custody to appellee for adoptive placement and planning and made a number of relevant findings to this appeal.

{¶ 20} Pursuant to R.C. 2151.414(D)(1)(a) the juvenile court found "the children are in a loving, secure home and placed with a sibling. The home is an adoptive placement and has been providing excellent care of the children. The guardian ad litem testified specifically that the children have shown dramatic improvement since placed in this home. The children are receiving services for their behaviors and special needs."

{¶ 21} Pursuant to R.C. 2151.414(D)(1)(c) the juvenile court found "the children have been in temporary custody for over 12 months out of a 22 month period."

{¶ 22} Pursuant to R.C. 2151.414(D)(1)(d) the juvenile court found "there is simply no way to ensure that the children are placed in a legally secure permanent placement without an award of permanent custody."

{¶ 23} Pursuant to R.C. 2151.414(B)(1)(a) by clear and convincing evidence the juvenile court found C.M. and J.M. could not be returned to appellant within a reasonable period of time and that an award of permanent custody is in the twins' best interests.

{¶ 24} Pursuant to R.C. 2151.414(E)(10) the juvenile court found that appellant had abandoned the twins. "Mr. Martin has been incarcerated since before this case was brought to Court. He will remain incarcerated until late November/early December 2017. Mr. Martin has not had contact with the children for the duration of this case, which has been open since January 2016, approximately 20 months."

8.

{¶ 25} The juvenile court further found that under R.C. 2151.414(D)(1)(e) an award of permanent custody is in the best interests of C.M. and J.M. because of the finding that R.C. 2151.414(E)(10) applies.

{¶ 26} Pursuant to R.C. 2151.414(E)(13) the juvenile court found appellant's continued incarceration "prevents him from providing care for the children. Mr. Martin testified concerning his lengthy criminal history, which includes convictions for violent crime going back several years. His lengthy incarceration during the present case clearly prevented him from caring for his children, and he also testified he has a history of incarceration in his youth."

{¶ 27} Pursuant to R.C. 2151.414(E)(16) the juvenile court found "that even in the best case scenario * * * [appellant] would only have approximately two months upon his release from prison to demonstrate a sober lifestyle, provide a stable home, secure income, and complete a plethora of services before the Court could even consider placement of his children with him. There is simply not time left to gamble with the health and safety of these children."

{¶ 28} The juvenile court further found appellee "made reasonable efforts to prevent the removal of the children as evidenced by past case plan services and working closely with the family. The Court finds that LCCS made reasonable efforts towards a permanent plan for these children by working with the family and investigating their potential permanent placement."

9.

{¶ 29} It is from the juvenile court's September 29, 2017 judgment entry which appellant-father filed his appeal, journalized on October 24, 2017.

{¶ 30} Appellant sets forth two assignments of error:

I. The trial court erred in finding that appellee Lucas County Children Services Board had made a reasonable effort to reunify the minor children with appellant J.M., father.

II. The decision granting custody of the minor children to Lucas County Children Services was against the manifest weight of the evidence.

**I. Reasonable Reunification Efforts**

{¶ 31} In support of his first assignment of error, appellant argues appellee did not make reasonable efforts to reunify appellant with his children pursuant to R.C. 2151.419(A)(1), 2151.414(B)(2), 2151.414(D)(2), and 2151.414(E)(1).

{¶ 32} Appellant argued temporary custody should have been extended to the maximum two-year length of time allowed by statute and "approximately 60 days" after his release from prison on November 26, 2017. Appellant argued that 60 days was a reasonable time for him "to complete the services which he had started while in custody, but which required local approval by the Agency to complete" and "to prove by clear and convincing evidence that the children could be placed with a parent within a reasonable time (paraphrasing)." Appellant testified at the permanent custody trial on his own behalf that: (1) he wrote letters to his children three to four times a month which he believed their maternal grandmother read to them, (2) asked a prior case worker to bring the

10.

children to prison for visitation, "but she refused, due to concerns with the children's behavior in the car," (3) a prior case worker "refused to let his family members bring the children to see him" in prison, (4) he expected to be released into transitional control to "allow him to pursue programs in the community which would help him retain custody of his children" but the program was eliminated for reasons out of his control, (5) he completed alcohol and other drugs treatment and an intensive outpatient program for addiction, (6) made an appointment with Care Source for the day after his anticipated release from prison "for assistance with starting any programs he would need for reunification"; "to connect him with batterer's intervention services locally, after his release"; and "to help him with a parenting program," (7) he completed two domestic violence prevention programs in May 2017, (8) he "spent time with [the twins] on a daily basis, generally after work" for the first 14 months of their lives, (9) his parents would help both he and the boys, (10) he "would help the boys with their behaviors once he was released, and would see that they get to their counseling sessions," (11) "he had a job lined up for after his release doing maintenance work for an apartment complex * * * and * * * accepted into an apprenticeship program for the boilermakers' union," and (12) he spent his prison time productively "including completing a culinary arts training program, and two automotive repair programs * * * all of which he took with the intent of improving his skills for caring for his family, once released."

{¶ 33} In response appellee argued the correct standard is whether appellee "made reasonable efforts to prevent the continued removal of the children in this case."

11.

Appellee argues the juvenile court, whether through the magistrate or the judge, made that finding ten times in the record, and appellant never objected to those findings until this appeal. Appellee further argued that where appellee sought permanent custody pursuant to R.C. 2151.413 and the R.C. 2151.414 hearing was held for that request, reasonable efforts to return the child to the child's home was not required by R.C. 2151.419(A). Even if it was required, appellee had already repeatedly done so and was not required to do so again at trial.

{¶ 34} The statute at issue states:

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those

12.

reasonable efforts. * * * In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

R.C. 2151.419(A)(1).

{¶ 35} The Ohio Supreme Court guides us that the "reasonable efforts" stated in R.C. 2151.419 does not apply to an R.C. 2151.413 motion for permanent custody nor to the hearing held for that motion pursuant to R.C. 2151.414 because those matters are not among the hearings specifically itemized in the statute. *In re Mar.H.*, 6th Dist. Lucas No. L-17-1171, 2018-Ohio-883, ¶ 51, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41. The record shows appellee renewed its motion for permanent custody pursuant to R.C. 2151.23, 2151.413, and 2151.414, and the hearing on that motion was held September 22, 2017. Appellant appeared at the hearing with his attorney and testified on his own behalf regarding his opinions of appellee's reasonable efforts. Moreover, the record also shows the juvenile court, although not required to do so, made various determinations regarding appellee's reasonable efforts to prevent the removal of the children from the children's home, to eliminate the continued removal of the children from the children's home, or to make it possible for the children to return safely home.

{¶ 36} There are other statutory provisions where appellee is not required to make "reasonable efforts." For example, pursuant to R.C. 2151.419(A)(2)(d), "the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal

13.

of the child from the child's home, and return the child to the child's home [where the] * * * parent from whom the child was removed has abandoned the child." The record in this matter is not clear if the juvenile court did so, even though the record is clear that pursuant to R.C. 2151.414(E)(10) the court found that appellant had abandoned the twins.

{¶ 37} Nevertheless, appellee must still make reasonable efforts to reunify the family pursuant to any other applicable statutes obligating appellee to do so. *See In re C.F.* at ¶ 42-43.

{¶ 38} The record shows the juvenile court during the custody process made frequent determinations regarding "reasonable efforts" by appellee and specifically noted appellant's ongoing incarceration in its judgment entries. And although we find it was not required to do so, on September 29, 2017, the juvenile court found appellee "made reasonable efforts to prevent the removal of the children as evidenced by past case plan services and working closely with the family. The Court finds that LCCS made reasonable efforts towards a permanent plan for these children by working with the family and investigating their potential permanent placement."

{¶ 39} Assuming appellant was correct and appellee had reasonable efforts obligations under R.C. 2151.419(A)(1), we find the juvenile court made all the required determinations.

{¶ 40} Appellant also urges us to find that approximately 60 days from his anticipated release date from prison was a reasonable time for him to complete the

14.

services begun in prison which he believed would show the children could be placed with him. We do not agree.

{¶ 41} The transcript of the September 22, 2017 hearing shows the juvenile court judge was originally swayed by appellant's passionate plea six months earlier for more time for these same services once he was out on transitional control, and to begin to bond with the children. None of that happened. A new case worker testified that since the March 2017 hearing appellant made no contact with the twins nor asked her to facilitate any contact, such as sending the children cards through her. Appellant later testified that he only asked the prior case worker for video visitations with the twins. The new case worker testified appellant's incarceration for the entire length of the case meant "he doesn't have a bond with the children. We've never been able to observe him with the children." Moreover, appellant's criminal history meant he had a number of concerns "that would need to be addressed prior to reunification. * * * Domestic violence, parenting, his parenting abilities. He would have to complete a dual assessment to assess if he has substance abuse and/or mental health concerns."

{¶ 42} Appellant testified that his many courses in anger management and substance abuse while incarcerated should be suitable to address appellee's concerns about domestic violence and parenting after his release from prison because he loved his kids and wanted to be with them. He confirmed his lengthy criminal history. With respect to parenting, the new case worker testified the twins' negative behaviors, including biting, kicking, hitting, spitting, and throwing objects at both other preschoolers

15.

and adults, put them at risk of expulsion from their preschool. Appellant acknowledged their negative behaviors were also the concern of the prior case worker who saw as impossible the one-and-one-half hour drive for the twins to visit appellant in prison. Appellant did not view his children as having special needs because "they're a little rough, but I mean, they're boys." He insisted that as a good parent he would make sure they went to whatever intensive behavior therapy classes they require. According to appellant, "Care Source also offers * * * pretty much everything I possibly need. They help you get into any programs. If they don't offer the program, they'll find out who offers the program, and they'll help me to get through any programs I need."

{¶ 43} The guardian ad litem testified at the September 22, 2017 hearing about the reasons for recommending permanent custody with appellee for adoption. The reasons included appellant's ongoing incarceration, the over two-year disruption to the twins' home life between appellee protective supervision and temporary custody, and appellant's criminal history including domestic violence which was an original problem in the home.

{¶ 44} The record shows the juvenile court made its decision after significant consideration of appellant's testimony, but found the remaining time was not enough for appellant to "demonstrate a sober lifestyle, provide a stable home, secure income, and complete a plethora of services before the Court could even consider placement of his children with him. There is simply not time left to gamble with the health and safety of these children." While the judge explained at length the reasons behind the decision,

16.

appellant became argumentative and frequently sought to interrupt the judge, demonstrating that he may not have the control over his temper that he claimed to have.

Court: Dad, this is the hardest part of this case, because I do know that you've made some changes. I can see that you care about the kids and you really want to parent them. I, in March, decided to continue this primarily for your sake, figuring that if you got out at the end of June, you would have seven full months to show us how you work with the boys with their special needs and that you would be able to remain sober and out of trouble in the community. * * * And it's very hard for me to do this, but I can't give you custody, and here's why. These kids have special needs. Hold on. That's going to be a stressor for you when you're out with them and you will always be an alcoholic, hopefully always in recovery. But there's no way we'll know whether you can stay in recovery when you're released in to the community until you're there.

* * *

If you get out at the end of November, that gives us a total of two months to see how it goes and that's not enough. * * * [M]y job is to look out for the children's best interest, not yours. * * * [T]hey're doing well in this home. They're with a sibling, they're with each other, their behaviors are beginning to stabilize – hold on, please. I know you're not happy about this because I know you mean it, but I have to consider my concern that

you're going to have two months to show that you're going to do this. And two months is not enough of a track record to – to convince me that these kids will be in a stable home that will last forever * * * even if you're successful for two months, I don't know that you'll make it six months * * * I lose jurisdiction of the case [at that point]. * * * I am not arguing with you. I am rendering my decision. I am trying to explain to you that I applaud you for all of your efforts, but I have to take care of these kids' best interests.

{¶ 45} Appellant continued to be argumentative with the judge, stating that all of his efforts were now "pointless." The judge responded with, "Really? Really, pointless? You only did this to get custody and then once you got custody * * * of your kids, you wouldn't have a motivating factor to keep clean for yourself?" Appellant still continued to be argumentative with the judge, again prompting the response, "I am so tired of arguing with you." The September 29, 2017 judgment entry reflects the juvenile court's entire set of findings relevant to this appeal.

{¶ 46} The two-year limit argued by appellant is found at R.C. 2121414(D)(2)(b), citing R.C. 2151.415(D)(4). The time limit was triggered when the original complaint was filed on January 11, 2016. R.C. 2151.415(D)(4). Thus, by January 11, 2018, the juvenile court had to determine a permanent custody disposition of the twins' case. This left only 46 days from November 26, 2017, for appellant to be assessed and complete services.

18.

{¶ 47} Appellant's self-declared efforts to improve himself are laudable, but we agree with the juvenile court that 46 days is insufficient time for appellant to meet his legal requirements. The record shows appellant started his self-improvement programs too late to shorten his prison sentence to equal the freedoms he envisioned from a former transitional control program. When those transitional control freedoms were eliminated by the state, he then rejected the resulting transitional control option available to him. Ultimately, appellant lost the gamble he played that his freedom under the old transitional control program would solve his timing problems with the permanent custody statutory mandates.

{¶ 48} It would be mere speculation by this court to determine appellant's own testimony somehow mirrored compliance with any applicable case plan pursuant to R.C. 2151.412. The twins were born in June 2014, and appellant was continuously incarcerated from November 2015 through November 2017. By that fact alone appellant is presumed to have abandoned the twins, even if he resumed contact at any time subsequent to the initial 90 days. *In re A.A.*, 6th Dist. Lucas No. L-17-1162, 2017-Ohio-8705, ¶ 29, citing R.C. 2151.011(C). Although appellant claimed to have sent three to four cards per month to the twins via the mother or the grandmother, no witness who testified could verify any of those contacts, and both mother and grandmother chose not to participate at the hearing. Since the juvenile court determined by clear and convincing evidence the twins were abandoned by appellant, the juvenile court was not required to determine whether appellee used reasonable efforts to reunify the twins with appellant or

whether the twins could not or should not be placed with appellant within a reasonable time. R.C. 2151.414(E)(10); *see* R.C. 2151.414(B)(1)(b).

{¶ 49} Moreover, the ongoing delay sought by appellant to "complete" services begun in prison was the speculative "gamble" referred to by the juvenile court in explaining its decision. Appellant's lengthy criminal past, long periods of incarceration, and questionable temperament do not inspire us to find appellant's promises this time will yield better results for the twins. In contrast, the record shows the twins experienced stability and behavior improvement in foster care with a potentially adoptive home.

{¶ 50} The permanent custody law does not contemplate holding the twins in custodial limbo while appellant completes his prison term that exceeds their temporary custody with appellee beyond 12 out of a consecutive 22-month period. *See* R.C. 2151.413(D)(1); 2151.414(D)(1)(c). The juvenile court's role is not to experiment with the twins' welfare or with adequately protecting them in order to permit appellant to prove his suitability upon release from prison. *In re A.A.* at ¶ 37, citing *In re M.M.*, 4th Dist. Meigs No. 14CA6, 2014-Ohio-5111, ¶ 33. This court has consistently held that the juvenile court is not required to prolong the custody proceedings for a parent to begin to cooperate in the case planning process. *Id.;* s*ee In re C.B.C.*, 4th Dist. Lawrence Nos. 15CA18, 15CA19, 2016-Ohio-916, ¶ 79-80 (a specific reunification plan with all possible services for an incarcerated parent is not required where the incarceration is a circumstance created by the parent.).

{¶ 51} Appellant's first assignment of error is not well-taken.

20.

## II. Manifest Weight of the Evidence

**{¶ 52}** In support of his second assignment of error, appellant argues appellee did not meet its burden to prove by clear and convincing evidence that he abandoned the twins. Although incarcerated he "made efforts to rehabilitate himself while in prison." Through those efforts he reduced his prison release date from December 31, 2017, to November 26, 2017. Moreover, as previously argued, he attempted to remain in the twins' lives.

**{¶ 53}** Appellee argues in response the juvenile court's decision was not against the manifest weight of the evidence. The evidence supported each of the juvenile court's findings stated in its judgment entry.

**{¶ 54}** In reviewing a juvenile court's determination in a permanent custody case under a manifest weight of the evidence standard, "we must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of justice that the decision must be reversed." *In re D.R.*, 6th Dist. Lucas No. L-17-1240, 2018-Ohio-522, ¶ 37, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We are mindful the juvenile court was the trier of fact and was "in the best position to weigh evidence and evaluate testimony." *Id.*, citing *In re P.W.*, 6th Dist. Lucas No. L-12-1060, 2012-Ohio-3556, ¶ 20. The juvenile court's discretion in determining the best interests of C.M. and J.M. with an order of permanent custody is accorded the utmost respect due to the nature of the proceeding and the impact

21.

on the lives of the parties concerned. *Id.*, citing *In re C.P.*, 10th Dist. Franklin No. 08AP-1128, 2009-Ohio-2760, ¶ 10.

{¶ 55} Because we earlier found the record contained the clear and convincing evidence supporting the juvenile court's finding that appellant abandoned the twins pursuant to R.C. 2151.414(E)(10), the juvenile court did not abuse its discretion when it awarded appellee permanent custody of the twins as in their best interests. R.C. 2151.414(D)(1)(e). Although the juvenile court found many factors to support its holding, it needed to only find one. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at ¶ 50.

{¶ 56} We do not find the juvenile court clearly lost its way to create such a manifest miscarriage of justice as to require reversal of the judgment regarding the permanent custody of C.M. and J.M.

{¶ 57} Appellant's second assignment of error is not well-taken.

{¶ 58} On consideration whereof, we find the judgment of the juvenile court terminating appellant's parental rights and granting permanent custody of C.M. and J.M. to appellee was supported by clear and convincing evidence. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

22.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____
                                                   JUDGE

Thomas J. Osowik, J.          

                                        _____
Christine E. Mayle, P.J.                                 JUDGE
CONCUR.

                                        _____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.